## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

CLIFFORD PICKETT, SR.   :
           :
    Plaintiff,   :
           :
VS.         :   C.A. NO. 1:17-cv-000467-JJM
           :
DITECH FINANCIAL, LLC,  :
RESIDENTIAL CREDIT SOLUTIONS, :
LLC; BANK OF AMERICA N.A.; THE :
BANK OF NEW YORK MELLON :
CORPORATION AND FIREMAN'S :
FUND INSURANCE COMPANY :
    Defendants,  :

## MEMORANDUM IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS

The Plaintiff, Clifford Pickett, Sr. (hereinafter "Plaintiff"), hereby objects to the Motion

Dismiss of the Defendants, Ditech Financial, LLC (hereinafter "Ditech"), Residential Credit

Solutions, Inc. (hereinafter "RCS") and The Bank of New York Mellon Corporation (hereinafter

"BNY Mellon"), dated April 26, 2018. The Defendants argue the Plaintiff has failed to allege

facts sufficient to state a claim for relief and the Amended Complaint should be dismissed

pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Plaintiff asserts claims against the Defendants Ditech, RCS, and BNY Mellon

sounding in negligence, breach of contract, conversion and unjust enrichment arising from the

Defendants wrongful handling and misappropriation of insurance proceeds which the Plaintiff

possessed an interest in.

In support of the Motion to Dismiss, the Defendants allege that the Plaintiff has no

interest in the insurance proceeds because the Plaintiff's interest was assigned to BNY Mellon

when BNY Mellon exercised the statutory power of sale pursuant to paragraph 22 of the

Mortgage. *See* Defs.' Mem. Supp. Mot. Dismiss at 6. Further, the Defendants argue that the Plaintiffs negligence claim must fail because loan servicers owe no duty in negligence to borrowers. *Id*. With respect to the Plaintiff's breach of contract claim, the Defendants RCS and Ditech argue that they were not parties to the Mortgage and therefore could not have breached the Mortgage. *See* Defs.' Mem. Supp. Mot. Dismiss at 7. The Defendants RCS and Ditech argue that the Plaintiff's conversion claim must fail because the Plaintiff did not possess an interest in the Proceeds and the Defendant RCS and Ditech were acting solely for the benefit of the secured creditor. *See* Defs.' Mem. Supp. Mot. Dismiss at 8. Finally, the Defendants argue that the Plaintiff's claim for unjust enrichment must fail because the disbursement of the Proceeds was governed by an express contract, namely the Mortgage. *See* Defs.' Mem. Supp. Mot. Dismiss at 9.

The Plaintiff offers that he possessed an interest in the insurance proceeds as the named insured under his policy of property insurance. Further, the Plaintiff argues that the mortgage, Defendant's Exhibit B ("Mortgage"), and referenced in the Complaint creates both a duty and a substantial relationship between the Plaintiff and all Defendants which supports the Plaintiffs' claims. Specifically, the Mortgage offered by the Defendants states as follows:

> Unless Lender and Borrower otherwise agreed in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, ***shall be applied to restoration or repair of the Property***, if the restoration or repair is economically feasible and Lender's security interest is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

2

*See* Defs.' Ex. B, Mortgage, p. 5, Section 5 "Property Insurance."  Emphasis added.  For the purpose of ruling on this motion, the Court should accept and view all facts in the light most favorable to the Plaintiff.  *See Perez v. Acevedo v. Rivero-Cubao*, 520 F. 3d 26, 29 (1st. Cir. 2008).

In this light, it is undisputed that real property at the center of this dispute sustained fire damage on or about July 20, 2014. *See* Am. Compl. Count I ¶9.  Following the fire, the Plaintiff sought the services of a licensed general contractor (hereinafter "Contractor"), to perform work necessary for the restoration and repair of the Property and to act as the Plaintiff's agent and/or representative in communicating with the Defendants. *See* Am. Compl., Count I ¶12-13. The Defendant RCS, in its capacity as the loan servicer on behalf of the secured creditor, received $207,241.02. *See* Am. Compl., Count I ¶14. The Defendant RCS received and accepted the funds subject to the rights and limitations contained in Section Five of the Mortgage. Said section mandates that the funds shall be used towards the restoration or repair of the property, if the restoration or repair is economically feasible. *See* Mortgage, Defs.' Ex. B.  The Defendants Ditech and BNY Mellon are successors in interest to RCS.

On the date of loss, the Plaintiff was the named insured under the Policy, was not in default on the Mortgage, and the Defendant BNY Mellon had not exercised the statutory power of sale and foreclosed on the Property. Therefore, on the date of loss, it was the Plaintiff and not the Defendant BNY Mellon which possessed an interest in the Proceeds. Further, the Defendants have failed to provide any binding law to support their arguments that the Defendants, as loan servicers, were not parties to the Mortgage and owed no duty of care to the Plaintiff under Rhode Island law. The Defendants have the burden to do so. Additionally, the Plaintiff has sufficiently

pled all the requisite elements of a claim for conversion and the facts, when considered in the light most favorable to the Plaintiff, support such a claim. Finally, after a balancing of the equities, the Court should deem the Defendants use of the insurance proceeds as patently unfair, inequitable, and outside of the agreement between the Plaintiff and secured creditor. Further, the Defendants' continued refusal to pay for the benefit of the Contractor's services is inequitable in that it has resulted in a substantial detriment to the Plaintiff.

For these reasons, and as more fully set forth below, the Defendants' Motion to Dismiss should be denied.

## I.   FACTS AND PROCEDURAL HISTORY

At all times relevant to this action, the Plaintiff was record owner of the property located at 22 Schooner Avenue, Jamestown, Rhode Island (the "Property"). *See* Am. Compl. Count I, ¶6. On January 9, 2007, Clifford Pickett, Sr. granted a mortgage to Mortgage Electronic Registration Systems, Inc. as nominee for America's Wholesale Lender (the "Mortgage"). *See* Mortgage, Def.'s Ex. B. The Defendant, RCS, serviced the Mortgage. *See* Am. Compl., Count I, ¶9.

On or about July 20, 2014, the Property sustained serious damage as a result of an accidental house fire. *See* Am. Compl. Count I ¶9. On the date of the fire, the Property was covered by a homeowner's insurance policy. *See* Am. Compl., Count I ¶10. Following the fire, the Plaintiff hired a licensed general contractor (hereinafter "Contractor"), to perform work necessary for the restoration and repair of the Property and to act as an agent and/or representative of the Plaintiff in communicating with the Defendants. *See* Am. Compl., Count I ¶12-13.

On or about September 3, 2014, the Defendants, Residential Credit Solutions, Inc. (hereinafter "RCS") received insurance proceeds in the amount of $207,241.02 pertaining to the losses to the Property (the "Proceeds"). *See* Am. Compl., Count I ¶14. Pursuant to the terms of the Mortgage, the Proceeds were to be applied to "the restoration and repair of the Property, if the restoration or repair is economically feasible." *See* Mortgage, Defs.' Ex. B. However, without any notice to the Plaintiff or his permission, consent or authority, the Proceeds were negotiated and deposited into an account held by the Defendants RCS and/or BAC. *See* Am. Compl., Count I ¶15.

The Property was foreclosed on in December 2015. *See* Am. Compl., Count XII ¶16. Following the foreclosure sale of the Property, the Defendant, BNY Mellon, became record owner of the Property and was owner until the Property was sold to a third party in December 2016. *Id*.

On or about October 6, 2017, the Plaintiff filed a lawsuit in the United States District Court for the District of Rhode Island entitled "Clifford Pickett, Sr. v. Ditech Finanacial, LLC; Residential Credit Solutions, LLC; Bank of America Corporation; The Bank of New York Mellon Corporation and Fireman's Fund Insurance Company"; CA NO. 17-00467-JJM (the "Lawsuit") asserting claims sounding in negligence, breach of contract, conversion, unjust enrichment and vicarious liability arising from the Defendants wrongful handling and misappropriation of the Proceeds.  *See* Compl.

On February 27, 2018 the Plaintiff filed his Motion to Amend to remove his claims against the Defendant, Fireman's Fund Insurance Company from his Complaint. The Court

granted the Plaintiff's Motion to Amend April 2, 2018, making the Amended Complaint the operative pleading in this matter.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Gregor v. Aurora Bank FSB*, 26 F.Supp.3d 146, (2014) (quoting *Iqbal*, at 678). When considering a motion to dismiss, the court is required to " view the well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." *Gray v. Evercore Restructuring, LLC*, 544 F.3d 320, 324 (1st Cir. 2008) (citing *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008).

In addition to the complaint, the court may consider "documents the authenticity of which are not disputed by the parties; documents central to plaintiff['s] claim; and documents sufficiently referred to in the complaint." *American States Ins. Co. v. LaFlam*, 808 F.Supp.2d 400 (2011) (quoting *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir.2007)).

## III.   LAW AND ARGUMENT

### A.   THE PLAINTIFF POSSESSED AN INTEREST IN THE PROCEEDS PURSUANT TO HIS INSURANCE POLICY AND THE MORTGAGE

The Defendants argue that the Plaintiff's claims must fail because his rights to the Proceeds were expressly assigned to the Defendant BNY Mellon when it exercised the statutory

power of sale pursuant to Section 22 of the Mortgage and acquired the Property following a

foreclosure auction in December 2015. *See* Defs.' Mem. Supp. Mot. Dismiss at 6. The

Defendants argument is flawed because it asks the Court to ignore the parties respective interests

in the Proceeds on the date of loss and at the time the Defendants engaged in the wrongful

conduct giving rise to this suit. The Plaintiff argues that each party's rights in the Proceeds

should be determined as of the date of loss and the date the Defendants received and wrongfully

appropriated the Proceeds.

The Rhode Island Supreme Court has held "[i]t is a general principle of insurance law

that an insurable interest is determined as of the date of the loss." *Rhode Island Joint*

*Reinsurance Ass'n v. O'Sullivan*, 91 A.3d 824, 828 (2014) (citing 44 Am. Jur. 2d Insurance § 936

at 225 (2013) ("Generally, the extent of an insurable interest in property should be determined as

of the date of the loss,")). In *O'Sullivan,* the insured obtained a first and second mortgage with

the insured and second mortgagee listed in the policy as loss payees. The insured property

sustained a water damage loss and the insured filed a claim under the policy. The insured

subsequently defaulted on the first mortgage and the first mortgagee foreclosed on the property.

The first mortgagee claimed that they owned the insured property as a result of the foreclosure

sale and the second mortgagee's rights to the proceeds was extinguished upon that sale. The

second mortgagee argued that it was entitled to the insurance proceeds as the named

mortgagee/loss payee under the insured's policy. The court held that the second mortgagee was

entitled to the proceeds reasoning that each party's interest in the proceeds is determined as of

the date of loss and the second mortgagee's interest was not extinguished on account of the first

mortgagee's foreclosure. *Id.*

On the date of loss, the Plaintiff was the named insured under the Policy, was not in default on the Mortgage, and the Defendant BNY Mellon had not exercised the statutory power of sale and foreclosed on the Property. Therefore, on the date of loss, it was the Plaintiff and not the Defendant BNY Mellon which possessed an interest in the Proceeds. The Defendants' argument that the Plaintiff possesses no interest in the Proceeds is flawed because it asks the Court to accept that the Plaintiff's rights to the Proceeds were extinguished as a result of the subsequent foreclosure sale, which occurred long after the date of loss and distribution of the Proceeds. The Plaintiff argues that the subsequent foreclosure is irrelevant, and the determinative factor is whether he possessed an interest in the Proceeds on the date of loss and the date the Defendants received the Proceeds. The Plaintiff offers that as the name insured under the Policy, he did possess such an interest. Accordingly, the court should reject the Defendants argument that the Plaintiff possessed no interest in the Proceeds and determine the Plaintiff did possess an interest in the Proceeds.

Further, the instant matter is clearly distinguishable from other instances where the courts have upheld mortgage provisions similar to the provision relied upon by the Defendants, whereby a mortgagor's interest in any insurance proceeds is assigned to the mortgagee in the case of a foreclosure.  In *Rhode Island Joint Reinsurance Ass'n v. Santana-Sosa,* a mortgagor executed a mortgage containing a provision stating that "any insurance proceeds would be distributed to the lender and its successors and assigns." 92 A.3d 192, 194, 196 (2014). The property was subsequently damaged by a fire and the mortgagor defaulted on the mortgage resulting in a foreclosure sale of the property. The insurer brought an interpleader action requesting the court to determine each party's rights in the insurance proceeds. Similarly, *R.I. Joint Reinsurance*

8

*Ass'n v. Rosario*, involved an interpleader action concerning the distribution of insurance proceeds for a property damaged by a fire. 116 A.3d 168, 169-170 (2015). The court in each case held that " no conceivable resolution of this dispute would result in * * * the borrower[], having a legitimate claim to the funds." *Santana-Sosa*, 92 A.3d. at 197;  *Rosario*, 116 A.3d at 171-172.

The Plaintiff offers that the instant matter is factually distinguishable from *Santana-Sosa* and *Rosario*. Significantly, in *Santana-Sosa* and *Rosario,* following the fire, the mortgagees made the determination that the repair of the property "*was not economically feasible"* as required by the mortgage. (Emphasis added). In the present matter, no such determination was made by the Defendants despite their obligation under the terms of the Mortgage to do so. Not only did the Defendants fail to make said determination and notify the Plaintiff of such, but the Defendants sent correspondences to the Plaintiff, significantly after the fire, requesting updates as to the repairs the Plaintiff was having completed on the Property. *See* Letter, **<u>Exhibit A</u>**. Following the Contractor's performance of repairs to the Property, the Defendants, despite receiving the Proceeds which were intended such repairs, refused to pay to the Plaintiff or the Contractor the value of the work performed.  As a result, the Defendants appreciated a windfall in that they received not only the benefit of the Proceeds, but also the benefit of the Contractor's work, which certainly resulted in an increase in the sale price the Defendants received when the Property was sold at foreclosure. In Santana-Sosa and Rosario, the mortgagors had no repairs made to the properties and incurred no detriment as the Plaintiff has in this matter. Additionally, *Santana-Sosa* and *Rosario* were both interpleader actions where the court sought to determine each party's respective interest in the proceeds prior to disbursement. In these cases, the mortgagors had already defaulted prior to the disbursement of the proceeds. In this matter, the

Defendants received and converted the Proceeds long before the Defendant defaulted on the Mortgage. Further, the Defendants failed to make a determination that the repair of the Property was not economically feasible, and instead sent correspondences requesting receipts and updates as to the repairs performed on the Property. *See* Letter, **Exhibit A**.

As a result, the Plaintiff argues that due to the unique factual issues of his case, the holdings of *Santana-Sosa* and *Rosario* are inapplicable and should not be relied upon by this court.

### B.   THE DEFENDANTS RCS AND DITECH OWED A DUTY TO THE PLAINTIFF AS SERVICERS OF THE MORTGAGE.

To prevail on a negligence claim, a plaintiff must a "must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage. *Jenard v. Halpin*, 567 A.2d 368, (1989) (citing *Atlantic Home Insulation, Inc. v. James J. Reilly, Inc.*, 537 A.2d 126, 128 (R.I.1988)). The Defendants argue that the Plaintiff's claims sounding in negligence must fail because the Defendants, as servicers of the Mortgage, did not owe any duty to the Plaintiff under Rhode Island law. In support of this position, the Defendants cite two cases holding that a loan servicer owes no general duty of care to a borrower under Massachusetts law. *See MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486 (1st Cir. 2013); *Corcoran v. Saxon Mortg. Servs.' Inc.*, No. 09-11468, 2010 WL 2106179, at *4 (D.Mass. May 24, 2010). The Defendants fail to cite any authority which supports the position that no duty exists between a loan servicer and borrower under Rhode Island law.

Although several jurisdictions follow the general rule that loan servicers owe no duty to a borrower, no Rhode Island court has adopted such a rule. Further, many jurisdictions have

10

recognized exceptions to this rule under certain circumstances. *See Daniels v. Select Portfolio Servicing, Inc., 246 Cal.App.4th 1150, 1166* (2016) (lenders owe borrowers a "duty of care with respect to the loan modification process.")[1]; *Lonergan v. Bank of Am.*, N.A., 2013 WL 176024 (W.D. Mo. 2013) (a loan servicer had a duty to exercise reasonable care in providing the borrowers with accurate information.); *Snyder v. HSBC Bank, USA, N.A.*, 913 F.Supp.2d 755, (2012) (servicer owed borrower "a fiduciary duty in the processing of their application for a loan modification."); *Morrow v. Bank of America, N.A.*, 375 Mont. 38 (2014) (servicer "owed a duty to manage the modification process in a manner that would not cause the [borrower] to suffer loss or injury by reason of its negligence."). The Plaintiff argues that the Defendants owed a duty to the Plaintiff to apply the Proceeds it received in accordance with the terms of the Mortgage.

Whether the Defendants owed the Plaintiff a duty "is a question of law." *Berard v. HCP, Inc.*, 64 A.3d 1215, 1218 (R.I. 2013). The Rhode Island Supreme Court has held "there is no clear-cut formula to determine whether a duty exists in a specific case." *Ouch v. Khea*, 963 A.2d 630, 633 (2009) (citing *Kenney Manufacturing Co. v. Starkweather & Shepley, Inc.*, 643 A.2d 203, 206 (R.I.1994). When determining whether a duty exists, the court will consider "all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations and notions of fairness." *Mallette v. Children's Friend and Service*, 661 A.2d 67, 70 (1995) (quoting *Kenney*, 643 A.2d at 206).

---

[1]  In *Daniels*, the court applied the *Biakanja* factors and concluded that a loan servicer owed a duty to its borrower. *Daniels*, at 1166. These factors  (1) "the extent to which the transaction was intended to affect the plaintiff," (2) "the foreseeability of harm to [the plaintiff]," (3) "the degree of certainty that the plaintiff suffered injury," (4) "the closeness of the connection between the defendant's conduct and the injury suffered," (5) "the moral blame attached to the defendant's conduct," and (6) "the policy of preventing future harm." *Biakanja v. Irving*, 49 Cal.2d 647, 650 (1958).

The unequal relationship between the parties supports the position that the Defendants owed a duty to the Plaintiff to apply the Proceeds pursuant to the terms of the Mortgage. The Defendants RCS and Ditech are not secured creditors, the Defendants are the entities who service the loan for the benefit of the secured creditor.  The Defendants are considered nominees of the secured creditor.  The Defendants' role is that of an agent of the secured creditor, and their duties are to service the note and mortgage, i.e., collect payments, issue notices, and enforce the provisions of both the note and mortgage.[2] As servicers of the Mortgage, the Defendants received the Proceeds pursuant to the terms of the Policy and Mortgage. The Defendants exercised complete control over the Proceeds and the Plaintiff was forced to rely on the Defendants to ensure that the Proceeds would be used for the repair and restoration of the Property, as required by the Mortgage. The Plaintiff had no choice as to the servicer of the Mortgage and he relied exclusively on the Defendants for all matters related to the Mortgage.

The Defendants, upon receipt of the Proceeds, had a duty to hold and use the insurance proceeds in accordance with Section 5 of the Mortgage. The Plaintiff argues that requiring such a duty is not excessive in scope and does not place an undue burden on the Defendants. As servicers of the Mortgage, the Defendants are relied upon by not only the secured creditor, but also the Plaintiff for all matters related to the Mortgage. Imposing a duty on servicers to abide by the terms of the agreement between the lender and borrower is

It is reasonably foreseeable that a servicer's failure to abide by the terms of the mortgage when handling insurance proceeds could result in harm to a borrower. "[T]he foreseeability inquiry considers generally whether the category of negligent conduct at issue is sufficiently

---

[2] A nominee relationship is akin to that of a principal and agent. *See Culhane v. Aurora Loan Services of Nebraska*, 826 F.Supp.2d 352, 370 (D.Mass.2011) (" The term ' nominee' in fact connotes a narrow form of agency . . . ." )

likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Gushlaw v. Milner*, 42 A.3d 1245, 1261 (2012)(quoting *Martin v. Marciano*, 871 A.2d 911, 917 (R.I.2005) (internal quotations omitted; citations omitted)). In this case, it was reasonably foreseeable that the Defendant's failure to promptly inspect the Property to determine whether the restoration or repair of the Property was economically feasible and its failure to apply the Proceeds to the restoration and repair of the Property, as required under Mortgage, would cause harm to the Plaintiff. As a result, the foreseeability factor weighs in the favor of the Plaintiff.

Public policy supports imposing a duty on the Defendants to abide by the terms of the Mortgage which they serviced. A mortgage is a contract, and the state has an interest in ensuring that contracting parties are bound by the terms they agree to. Further, the state has an interest in protecting borrowers from lenders and loan servicers who either are incompetent, negligent or those who seek to take advantage of their position of influence to the detriment of borrowers. Requiring that servicers comply with the terms of mortgages when applying insurance proceeds will minimize abusive conduct and provide an incentive to servicers to act carefully and honestly when dealing with borrowers.

Finally, notions of fairness support a finding that the Defendants owed a duty to the Plaintiff. In this case, the Defendants exploited their relationship with the Plaintiff, insurers, insureds, and contractors to gain a financial windfall.   The Defendants both appreciated the benefit of the work performed by the Contractor by increasing the value of the property and used the insurance proceeds to pay-down the Plaintiff's existing obligation. The terms of the Mortgage agreed to by the Plaintiff and his lender prohibited the Defendants from doing both. The Plaintiff

13

relied on the Defendants to ensure that the terms he agreed to with his lender would be followed. The Court should deem such use of the insurance proceeds as patently unfair, inequitable, and outside of the agreement between the Plaintiff and lender.

Further, Rhode Island courts have "recognize[d] that a duty of ordinary care extends from a bank to its customers" independent of any contract between the bank and its customers." *Empire Merchandising Corp. v. Bancorp Rhode Island, Inc.*, C. A. PB 08-3372, (R.I. Super. Sep. 15, 2011) (citing *Ciccone v. Pitassi*, No. 97-4180, 2004 WL 2075120, at *6 (R.I. Super. Aug. 13, 2004). The court relies on *Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 618-19 (7th Cir. 2001) which recognized "that the implied duty of care between a bank and its customers is derived from the common law, embraced by the UCC, and will support recovery in either contract or tort". *Id*. The court reasoned that the relationship existing between a bank and its customers is comparable to an attorney-client or accountant-client relationship and explains "[i]n handling basic transactions, a bank makes decisions independent of its customers and the contracts it executes with its customers. Moreover, customers expect their bank to possess knowledge and expertise in addition to the bank's ability to fulfill its contractual responsibilities. Finally, the relationship between a bank and customer, unlike that between, for instance, an architect and his or her client, results in an intangible product." *Id* (citing *Ciccone*, supra).

Although, the Defendants, Ditech and RCS are loan servicers, not banks, the Defendants are complex financial institutions who acted as the agent of the Plaintiff's lender for all matters related to the Plaintiff's Mortgage. The Plaintiff argues that the court should require the same duty of ordinary care of loan servicers, who act on behalf of a bank when communicating with the bank's customers, as it requires of the bank itself. The courts' rationales for holding that

14

banks owe an ordinary duty of care to their customers, are also applicable in the case of loan servicers and the borrowers. Like in the case of a bank, borrowers expect loan servicers to possess particular knowledge and expertise. In the case of the Defendants, the Plaintiff communicated exclusively with the Defendants for all matters related to his Mortgage and relied exclusively on the Defendants knowledge and expertise with respect to the Mortgage. The Plaintiff had no choice as to the entities that serviced his Mortgage and had no choice but to communicate with the Defendants for all matter related to his Mortgage. Also, when servicing a borrower's loan, loan servicers make decisions independent of the loan agreement which is central to its relationship with the borrower. This is independent decision making is exemplified by the Defendants' decision to apply the Proceeds in a manner contrary to the terms of the Mortgage.  Finally, like the relationship between a bank and its customers, the relationship between a loan servicer and borrower relate to an intangible product, such as a mortgage. The Defendants relationship with the Plaintiff related to an intangible product, the application of payments to the Mortgage. For the following reasons, the Plaintiff contends that the court should determine that the Defendants, as the servicers of the Mortgage, owed the Plaintiff a duty of care to apply the Proceeds in accordance with the Mortgage.

The Defendants have failed to cite any binding law which supports its argument that the Defendants, as loan servicers, owed no duty of care to the Plaintiff under Rhode Island law. The burden is on the Defendants to do so. Therefore, the Court should deny the Defendants' Motion to Dismiss the Plaintiff's claim sounding in negligence.

### C.    THE DEFENDANTS DITECH AND RCS, AS AGENTS OF THE SECURED CREDITOR, ARE BOUND BY THE TERMS OF THE MORTGAGE.

The Defendants argue that the Plaintiff's breach of contract claims must fail because the Defendants RCS and Ditech were not parties to the Mortgage. *See* Defs.' Mem. Supp. Mot. Dismiss at 7. As such, the Defendants RCS and Ditech argue that they were not bound by the terms of the Mortgage. The Plaintiff argues that as agents of the secured creditor, the Defendants were bound by the terms of the Mortgage. In accepting the Proceeds, the Defendants were required to hold and disburse the funds in accordance with the agreement between Plaintiff and secured creditor.  The role of the Defendants was not to take the funds for use and disbursement as they deem necessary or see fit. The Defendants' role under these facts was to receive and disburse the funds necessary for the restoration and repair of the property per the terms of the Mortgage. The Defendants have provided no binding case law rebutting the Plaintiff's argument that the Defendants, as agents of the secured creditor, were bound by the terms of the Mortgage.

The Defendant relies on *Chanthavong v. John Doe Corp.*, where the United States District Court for the District of Rhode Island granted a loan servicers motion for summary judgment with respect to the borrower's breach of contract claim. 2012 WL 6840496, at *3 (D.R.I. Nov. 19, 2012). In support of its decision, the court cites two cases where the United States District Court for the Western District of Pennsylvania held that loan servicers were not a party to the mortgage and therefore could not be held liable for breach of contract. *Id.* (citing *Glover v. Udren*, Civil No. 08-990, 2010 WL 5829248, at *3 (W.D. Pa. Oct. 21, 2010); *Trunzo v. Citi Mortg.*, Civil Action No. 2:11-cv-01124, 2012 WL 2405257, at *6 (W.D. Pa. June 25, 2012)). However, the court also cites *Cortinas v. Nevada Hous.*, No. 2:11-CV-01480-KJD-RJJ, 2011 WL 6936340, at *5 (D. Nev. Dec. 30, 2011), which states that "mortgage servicers,

whether holders of the mortgage note or simply agents of the holder of the note, may be liable for contractual breaches if the facts demonstrate the existence of a contract")).

In *Wells Fargo Bank, N.A. v. The Ash Organization*, a borrower asserted a tortious-interference claim against a loan servicer for interfering with the borrower's mortgage. 2010 WL 2681675 (D.Or. July 2, 2010). The court granted summary judgment in favor of the loan servicer reasoning that the servicer, as the lender's agent, was legally a party to the loan agreement between the lender and borrower, and "an entity cannot, as a matter of law, tortiously interfere with a contract to which it is a party." *Id*. The court continued by stating that the loan servicer was not some "intermeddling third-party stranger" to the lender's contract with the borrower and that the "[lender] interacted with [the borrower] only through the [servicer], and in this respect [the lender's] contractual relationship with [the borrower] was inextricably linked to its contractual relationship with the [loan servicer]." *Id*. In light of court's reasoning in *Wells Fargo Bank, N.A. v. Ash Organization*, the Plaintiff argues that as loan servicer of the Plaintiff's Mortgage, the Defendants were "inextricably linked" to the contractual relationship between the Plaintiff and lender, and therefore are legally a party to said agreement.

Further, the Plaintiff argues that as agents and nominees of the secured creditor, the privity of contract which existed between the secured creditor and Plaintiff should be imputed to the Defendants. Courts have expressed support for the argument that the privity of contract existing between a borrower and lender could be imputed to a loan servicer under the agency theory. *Kapsis v. American Home Mortg. Servicing Inc.* 923 F.Supp.2d 430, 451 (E.D.N.Y. 2013) (citing *In re Griffin*, 2010 WL 3928610, at *2-3, 2010 Bankr. LEXIS 3555, at *6.) The Defendants' role is that of an agent of the secured creditor. Therefore, even if the court was to

17

determine that the Defendant was not a party to the Mortgage, the Plaintiff argues that the privity of contract existing between the Plaintiff and secured creditor should be imputed to the Defendants due to their role as agent of the secured creditor.

Additionally, the Plaintiff offers that in failing to apply the Proceeds in accordance with the terms of the Mortgage, the Defendants not only breached the terms of the Mortgage but also an implied-in-fact contract with the Plaintiff. The Rhode Island Supreme Court has held that an implied-in-fact contract " is a form of express contract wherein the elements of the contract are found in and determined from the relations of, and the communications between the parties, rather than from a single clearly expressed written document." *Cote v. Aiello*, 148 A.3d 537, 545 (2016) (quoting *Marshall Contractors, Inc. v. Brown University*, 692 A.2d 665, 669 (R.I. 1997)). The court continues by explaining that "[t]he difference between an express contract and an implied-in-fact contract is simply the manner by which the parties express their mutual assent." *Id*. (quoting *Marshall Contractors, Inc.*, 692 A.2d at 669). To enforce an implied-in-fact contract, the contract must "contain all [of] the elements of an express contract." *Id*. (quoting *Bailey v. West*, 105 R.I. 61, 64, 249 A.2d 414, 416 (1969). The courts states that " essential elements of contracts 'implied in fact' are mutual agreement, and intent to promise, but the agreement and the promise have not been made in words and are implied from the facts." *Id*. (quoting *Bailey*, 105 R.I. 64-65, 249 A.2d at 416). When deciding whether these elements existed between the parties, the court will take into account the "parties' conduct, actions, and correspondence." *Id*. (quoting *Marshall Contractors, Inc.*, 692 A.2d at 669).

All of the essential elements of an implied-in-fact contract existed between the Defendants and Plaintiff. As previously stated, the Plaintiff dealt exclusively with the Defendants

18

for all matters related to the Mortgage. The Defendant provided the Plaintiff with monthly statements, as well as other communications related to the Mortgage. The Plaintiff made monthly mortgage payments to the Defendant in accordance with the terms of the Mortgage. In accepting the Plaintiff's monthly mortgage payments, there was a mutual expectation between the parties that the Plaintiff, as borrower, and Defendants, as loan servicers, would abide by the terms of the Mortgage. The terms of the Mortgage required that any insurance proceeds were to be used for the repair and restoration of the Property, unless it was determined that the repair of the Property was not economically feasible. No such determination was made by the Defendants. The Defendants clearly breached its agreement with the Plaintiff by failing to apply the Proceeds in accordance with the terms of the Mortgage. As a result, the Defendants breached their implied-in-fact contract with the Plaintiff.

Therefore, the Court should deny the Defendants' Motion to Dismiss the Plaintiff's claim sounding in breach of contract.

### D. THE PLAINTIFF HAD AN INTEREST IN THE PROCEEDS AND THE DEFENDANTS DITECH AND RCS APPROPRIATED THE PROCEEDS FOR THEIR OWN USE.

The Rhode Island Supreme Court has held, "the gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession." *Fuscellaro v. Industrial National Corp.*, 117 R.I. 558, 560, 368 A.2d 1227, 1230 (1977). With respect to a conversion claim, the question before the court is "whether the defendant has appropriated to his own use the chattel of another without the latter's permission and without legal right." *Terrien v. Joseph*, 73 R.I. 112, 115, 53 A.2d 923, 925 (1947). The Defendants argue that the Plaintiff has failed to allege any plausible

19

possessory interest in the Proceeds and as a result his conversion claim must fail. *See* Defs.' Mem. Supp. Mot. Dismiss at 8. Further, the Defendants RCS and Ditech argue that they did not appropriate the Proceeds for their own use because they acted solely for the benefit of the secured creditor. *See* Defs.' Mem. Supp. Mot. Dismiss at 9. The Defendants ask the court to conclude that although the Defendants received the Proceeds and failed to apply the Proceeds to the repair of the Property, they appreciated no benefit from the Proceeds they received. However, the Defendants have offered no evidence in support of said arguments and simply ask the Court to accept these conclusory assertions as fact.

As previously stated, the Plaintiff possessed an interest in the Proceeds pursuant to the Policy and Section 5 of the Mortgage. The Plaintiff alleges that the Defendants had knowledge of the Plaintiff's interest when the Defendant RCS received the Proceeds on September 3, 2014. Despite knowledge of this interest, and with the intent to permanently deprive the Plaintiff of such, the Defendant RCS appropriated the Proceeds to itself. In doing so, the Defendant deprived the Plaintiff of his interest in the Proceeds. The Defendants argue that they appreciated no benefit from the Proceeds and were acting solely for the benefit of the secured creditor. The Defendants has offered nothing in support of these assertions and simply ask the Court to accept them as fact. However, when considering a motion to dismiss, the Court is required to "view the well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." *Gray,* 544 F.3d at 324. Accepting the Defendants' contention that they appreciated no benefit from their receipt of the Proceeds is contrary to the standard that the facts be viewed in a manner most favorable to the Plaintiff and all reasonable inferences be drawn in the Plaintiff's favor. The Plaintiff argues that the Defendants' receipt of the Proceeds and refusal

to apply the Proceeds to the repair of the Property at a minimum creates a reasonable inference that they derived some benefit from the Proceeds.

The Plaintiff has alleged that the Defendants received the Proceeds pursuant to the Mortgage but failed to apply the Proceeds to the repair and restoration of the Property as required by the Mortgage. These facts  The Plaintiff offers that he has sufficiently pled all the requisite elements of a claim for conversion and the facts, when considered in the light most favorable to the Plaintiff, support such a claim. Therefore, the Defendants have failed to meet their burden and the Court should deny their Motion to Dismiss.

### E.   THE DEFENDANTS APPRECIATED THE BENEFIT OF THE PROCEEDS AND CONTRACTOR'S SERVICE AND THEREFORE WERE UNJUSTLY ENRICHED.

"It is well established that '[r]ecovery for unjust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them.'" *South County Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 213 (R.I. 2015) (*quoting Emond Plumbing & Heating, Inc. v. BankNewport*, 105 A.3d 85, 90 (R.I. 2014)).

> Under Rhode Island law, unjust enrichment is not simply a remedy in contract and tort but can stand alone as a cause of action in its own right.  To recover on an unjust enrichment claim, a plaintiff must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof.  As a result, unjust enrichment focuses on the propriety of a payee or beneficiary retaining funds or a benefit . . . .

*Cote v. Aiello*, 148 A.3d 537 (2016) (internal quotations omitted, citations omitted).   The Rhode Island Supreme Court has explained "that the third prong of the analysis is the most important.

21

*Emond Plumbing & Heating, Inc. v. BankNewport*, 105 A.3d 85, (2014) (quoting *Narragansett*

*Elec. Co. v. Carbone*, 898 A.2d 87, 100 (R.I. 2006)). "Determining what constitutes a just or

unjust result requires a trial justice to examine the facts of the particular case and balance the

equities." *Dellagrotta v. Dellagrotta*, 873 A.2d 101, 115 (R.I. 2005) (citing *R & B Electric Co. v.*

*Amco Construction Co.*, 471 A.2d 1351, 1356 (R.I. 1984)).

Section 5, Page 5, of the Mortgage entitled "Property Insurance" provides the following:

> Unless Lender and Borrower otherwise agreed in writing, any insurance
> proceeds, whether or not the underlying insurance was required by
> Lender, ***shall be applied to restoration or repair of the Property***, if the
> restoration or repair is economically feasible and Lender's security
> interest is not lessened.  During such repair and restoration
> period, Lender shall have the right to hold such insurance proceeds until Lender
> has had an opportunity to inspect such Property to ensure the work has
> been completed to Lender's satisfaction, provided that such inspection
> shall be undertaken promptly.  Lender may disburse proceeds for the
> repairs and restoration in a single payment or in a series of progress
> payments as the work is completed.

*See* Mortgage.  Emphasis added.  The clear language of the Mortgage, to which the Defendants

are bound to comply, states that the insurance proceeds "shall be applied to the restoration or

repair of the Property, if the restoration or repair is economically feasible."  When the Defendant

RCS, received the $207,241.02 on September 3, 2014 (Am. Compl. Count I ¶ 14) it was

obligated to hold and use the insurance proceeds in accordance with Section 5 of the Mortgage.

The Defendants have not alleged that the restoration or repair was not economically feasible and

therefore should not have been performed by the Contractor hired by the Plaintiff. The

Defendants have not alleged the work performed by the Contractor was not completed to

Lender's satisfaction or that the Defendants even inspected the Contractor's restoration and repair

work.  Despite the restoration and repair work having been completed, the Defendants have not

paid the Plaintiff or the Contractor for the value of the benefit of the received.

The Defendants argue that the Plaintiff's claim for unjust enrichment must fail because the disbursement of the Proceeds was governed by an express contract, namely the Mortgage. *See* Defs.' Mem. Supp. Mot. Dismiss at 9. However, the Proceeds were not the only benefit the Plaintiff conferred to the Defendants. In addition to the Proceeds, the Defendants received the benefit of the work performed by the Contractor, work which was procured by the Plaintiff. The Rhode Island Supreme Court has held ""a benefit is conferred when improvements are made to property, materials are furnished, or services are rendered without payment." *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 99 (R.I. 2006). The Defendants would not have received this benefit if not for the Plaintiff. Further, not only has the Defendants received the benefit of the services performed by the Contractor, but the Defendants' refusal to pay for said services has resulted in a significant detriment to the Plaintiff. The Plaintiff is indebted to the Contractor for the value of the services performed and remains exposed to a potential collection action. The Plaintiff argues that the Defendants retention of this benefit, especially in light of the detriment it caused to the Plaintiff, is inequitable and warrants a finding that the Defendants were unjustly enriched.

In this case, the Defendants have exploited the relationship with the Plaintiff, insurers, insureds, and contractors to gain a financial windfall.  The Defendants both appreciated the benefit of the work performed by the Contractor by increasing the value of the property and used the insurance proceeds to pay-down the Plaintiff's existing obligation.  The Mortgage specifically prohibits the Defendants from doing both.  The insurance proceeds may either be used for the restoration and repair if economically feasible or may applied to the outstanding loan balance if the restoration and repair is not economically feasible.  The Defendants impermissibly did both.

At the foreclosure sale, the Defendant BNY Mellon appreciated an increased sales price to a third party because of the work performed by the Contractor and had the benefit of applying the insurance proceeds against the principal owed by the Plaintiff. After a balancing of the equities, the Court should deem the Defendants use of the insurance proceeds as patently unfair, inequitable, and outside of the agreement between the Plaintiff and secured creditor. Further, the Defendants' continued refusal to pay for the benefit of the Contractor's services is inequitable in that it has resulted in a substantial detriment to the Plaintiff.

## IV.    CONCLUSION

WHEREFORE, the Plaintiff respectfully requests that this Court deny the Defendants' Motion to Dismiss.

**THE PLAINTIFF,**
**CLIFFORD PICKETT, SR.**

By:   /s/  Gregory P. Massad
Gregory P. Massad, Esq. (#7401)
Messier, Massad & Burdick, LLC
1050 Main Street, Suite 8
East Greenwich, RI 02818
Tel.: (401) 385-3877
Fax: (860) 443-7015
gmassad@messiermassad.com

Dated: May 10, 2018                        His Attorney

## <u>CERTIFICATION OF SERVICE</u>

I certify that the foregoing was served upon all the following parties through the court's electronic filing system or by first class mail, postage prepaid, this 10th day of May, 2018. Parties may access this filing for viewing and/or downloading through the Court's CM/ECF System.

Joseph A. Farside, Jr., Esq.
Krystle G. Tadesse, Esq.
Locke Lord LLP
2800 Financial Plaza
Providence, RI 02903

Dean J. Wagner, Esq.
Schechtman Halperin Savage, LLP
1080 Main Street
Pawtucket, RI 02860

Mark J. Claflin, Esq.
Howd & Ludorf, LLC
40 Washington Street, Suite 220
Wellesley, MA 02481

/s/  Gregory P. Massad
 Gregory P. Massad