UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CLIFFORD PICKETT, SR., )
   Plaintiff, )
 )
v. )
 )
DITECH FINANCIAL, LLC, )
RESIDENTIAL CREDIT ) C.A. No. 17-467-JJM-LDA
SOLUTIONS, INC., BANK OF )
AMERICA CORPORATION, THE )
BANK OF NEW YORK MELLON )
CORPORATION, AND FIREMAN'S )
FUND INSURANCE COMPANY, )
   Defendants. )

## ORDER

Clifford Pickett filed suit against several financial institutions and mortgage servicers seeking $207,241.02 in insurance proceeds he alleges he was due after an accidental fire damaged his home in Jamestown, Rhode Island. All Defendants, Ditech Financial, LLC ("Ditech"), Residential Credit Solutions, Inc. ("RCS"), Bank of America Corporation ("BAC"),[1] and The Bank of New York Mellon Corporation ("BONY")[2] have moved to dismiss under Federal Rules of Civil Procedure 12(b)(6). ECF Nos. 32, 33.

---

[1] Bank of America, N.A. ("BANA") responds to Mr. Pickett's claims, assuming that he intended to name it as a defendant in light of the fact that it formerly serviced his loan. BANA asserts that BAC, which Mr. Pickett did sue, is not a proper defendant in this case because it is a holding company that never held an interest in Mr. Pickett's loan.

[2] Mr. Pickett voluntarily dismissed his claims against Fireman's Fund Insurance Company. ECF No. 20.

*I. Facts*

On January 9, 2007, Mr. Pickett obtained a loan for $423,000 from America's Wholesale Lender for property located in Jamestown, R.I. ("Property"). The parties entered into a uniform Mortgage Security Instrument ("mortgage").³ In compliance with Section 5 of the mortgage, Mr. Pickett insured the Property through the Fireman's Fund Insurance Company ("FFIC"). The Mortgage Electronic Registration System ("MERS") assigned the mortgage on August 25, 2010 to The Bank of New York Mellon as Trustee for the Benefit of Alternative Loan Trust 2007-7T2 Mortgage Pass-Through Certificates, Series 2007-7T2.

On or about July 20, 2014, the Property sustained serious damage due to an accidental fire. ECF No. 30. Mr. Pickett alleges that beginning on or about July 27, 2014, and for some time thereafter, a licensed general contractor performed restoration and repairs to the Property. On or about September 3, 2014, Mr. Pickett alleges that FFIC released insurance proceeds of $207,241.02 to RCS and BAC. However, RCS and/or BAC never disbursed the monies to Mr. Pickett or his contractor. Section 5 states, "[d]uring such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure work has been completed to Lender's

---

³ "Courts are permitted, in some instances, to consider on a Rule 12(b)(6) motion documents that were not attached to the complaint. We have found these 'narrow exceptions' to include 'documents the authenticity of which are not disputed by the parties; ... documents central to plaintiffs' claim; or ... documents sufficiently referred to in the complaint.'" *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 74 (1st Cir. 2014) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

2

satisfaction, provided that such inspection shall be undertaken promptly." ECF No. 32-3 at 6.[4] Mr. Pickett alleges that the Lender failed to inspect the Property.

Section 5 of the mortgage further states, "if the Lender acquires the Property under Section 22 or otherwise, the Borrower hereby assigns to the Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument." *Id.* Mr. Pickett defaulted on his mortgage. After default, the mortgagee applied the Proceeds to the outstanding principle balance and neither Mr. Pickett nor his contractor received any of the insurance proceeds.

Mr. Pickett filed a multi-count complaint, later amended, for negligence, breach of contract, conversion, unjust enrichment, and vicarious liability against all Defendants, alleging that these institutions' failure to turn over the insurance proceeds so that he could pay his contractor was in violation of the mortgage contract and common law. All remaining Defendants have moved to dismiss. ECF Nos. 32, 33. Mr. Pickett objected to both motions. ECF Nos. 34, 35.

---

[4] In fact, RCS as servicer sent a letter on December 8, 2014 stating, "we share your interest in getting the repairs completed in a timely manner" and notes that it is the property owner's "responsibility to keep [RCS] informed as to the status of repairs." ECF No. 34-2 at 2.

3

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At the same time, the Court "must accept a plaintiff's allegations as true and construe them in the light most favorable to them." *Gargano v. Liberty Int'l Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009). "A Rule 12(b)(6) motion will be granted only if, when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff to relief." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45–48 (1957)).

## III. Analysis

Mr. Pickett's amended complaint contains five claims: negligence, breach of contract, conversion, unjust enrichment, and vicarious liability. As not all of Mr. Pickett's claims are against every defendant and each defendant's role vis-à-vis the mortgage and Mr. Pickett's status as homeowner differs, the Court will discuss each of the Defendants and the claims brought against them in turn, after setting forth the legal elements of each claim.

### Negligence

Under Rhode Island law, "[t]o maintain a cause of action for negligence, the plaintiff must establish four elements: (1) a legally cognizable duty owed by defendant to plaintiff; (2) breach of that duty; (3) that the conduct proximately caused the injury; and (4) actual loss or damage." *Medeiros v. Sitrin*, 984 A.2d 620, 625 (R.I. 2009).

4

*Breach of Contract*

"To succeed on a breach of contract claim under Rhode Island law, a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010).

*Conversion*

"The gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession. To maintain an action for conversion, a plaintiff must establish that she was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." *Alex & Ani, LLC v. Elite Level Consulting, LLC*, 31 F. Supp. 3d 365, 371 (D.R.I. 2014) (internal citations omitted). The focus of inquiry is "whether the defendant has appropriated to his own use the chattel of another without the latter's permission and without legal right." *Terrien v. Joseph*, 53 A.2d 923, 925 (R.I. 1947).

*Unjust Enrichment*

"To recover for unjust enrichment, a plaintiff must prove (1) that a benefit was conferred upon the defendant by the plaintiff, (2) that the defendant has an appreciation for such benefit, and (3) that the defendant accepted the benefit in such a way that it would be inequitable for the defendant to retain the benefit without paying for it." *Ciampi v. Zuczek*, 598 F. Supp. 2d 257, 263 (D.R.I. 2009).

*Vicarious Liability*

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on behalf and subject to his control, and consent by the other so to act. The Rhode Island Supreme Court has outlined three elements that must be shown in order for an agency relationship to exist: (1) the principal must manifest that the agent will act for him, (2) the agent must accept the undertaking, and (3) the parties must agree that the principal will be in control of the undertaking." *Butler v. McDonald's Corp.*, 110 F. Supp. 2d 62, 66 (D.R.I. 2000) (internal citations omitted).

*A. BAC*

Mr. Pickett has brought claims for negligence, breach of contract, conversion, and unjust enrichment against BAC. He also brings claims for vicarious liability against BAC for negligence, breach of contract and conversion for RCS's role because he alleges that RCS was acting as BAC's agent within its scope of authority. Mr. Pickett alleges that BAC had a duty to "inspect the Property to determine whether restoration or repair of the Property was economically feasible," and if so, "apply the Proceeds to the restoration or repair of the Property." Mr. Pickett alleges BAC breached its duty by failing to inspect, thus causing "substantial financial damages and losses." BAC argues that it had no duty because it was neither the mortgagee nor the servicer at the time of or after the date of the fire.

Mr. Pickett's claims fail because he does not and cannot establish that BAC had any duty or took any action in relation to the insurance proceeds. In August

6

2010—several years prior to the date of loss—MERS assigned the mortgage to BONY so BAC was not a mortgagee at the time of the events of this case. Moreover, Mr. Pickett acknowledges that BAC was a former servicer who transferred servicing responsibilities to codefendant RCS on April 16, 2014, months before the July 20, 2014 date of loss. Mr. Pickett's own admission that BAC was not a party to the contract after April 16, 2014 makes the claims of negligence, conversion, breach of contract, and unjust enrichment against BAC not plausible.

*B. BONY*

Mr. Pickett brings one claim against BONY for unjust enrichment. BONY acquired Mr. Pickett's Property following the foreclosure sale, after the fire damaged the Property and Mr. Pickett allegedly made repairs to it. Mr. Pickett alleges BONY "appreciated the benefits of the Proceeds, as well as the repairs and restorations made to the Property." Mr. Pickett alleges restoration and repairs were made to the Property for which he was not compensated, creating a benefit that BONY appreciated when it sold the Property to a third party.

"In Rhode Island, unjust enrichment and quasi-contractual or implied contractual liability rests upon the 'equitable principle that one shall not be permitted to enrich himself unjustly at the expense of another or to receive property and benefits without making compensation therefor.'" *Cazabat v. Metro. Prop. & Cas. Ins. Co.*, No. C.A. KC99-0544, 2000 WL 1910089, at *7 (R.I. Super. Apr. 24, 2000) (quoting *R & B. Elect. Co., Inc. v. Amco Constr. Co., Inc.*, 471 A.2d 1351, 1355 (R.I. 1984)). Where there exists an express contract between the parties, equitable

doctrines such as unjust enrichment are unavailable. *Okmyansky v. Herbalife Int'l of Am., Inc.,* 415 F.3d 154, 162 (1st Cir. 2005). In this case, the mortgage is an express contract between the parties, which governed the disbursement of the insurance proceeds; accordingly, Mr. Pickett cannot state a claim for unjust enrichment against BONY.

## C. DITECH

Mr. Pickett alleges that Ditech acquired certain assets of RCS's servicing platform, including his mortgage and the insurance proceeds, on or about January 29, 2016. Mr. Pickett does not allege that Ditech was the servicer of Mr. Pickett's mortgage at any period relevant to this suit. In fact, Mr. Pickett alleges that RCS was the servicer of the mortgage at all times relevant to this action. Therefore, the Court dismisses all claims against Ditech.

## D. RCS

Mr. Pickett makes all five claims against RCS for its role in servicing his mortgage. RCS received the money from FFIC in September 2014 after the fire and held it in order for it to be applied to restoration or repairs, if economically feasible. As of December 8, 2014, RCS was still holding the funds, ultimately turning the proceeds over to the Lender when Mr. Pickett defaulted.

### a. Negligence

Mr. Pickett alleges RCS had a duty under the mortgage contract to, "promptly inspect the Property" and "to apply the Proceeds to the restoration and repair of the Property."

8

The general rule is that a bank does not owe a duty to a borrower. *MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 495 (1st Cir. 2013). Some courts have held, however, that servicers have a common law duty to exercise reasonable care in processing loan modification applications. *See Clinton v. Select Portfolio Servicing, Inc.*, 225 F. Supp. 3d 1168, 1174 (E.D. Cal. 2016); *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 48-49 (2014); *but see Ross v. Fed. Nat. Mortg. Ass'n*, No. 13–12656, 2014 WL 3597633, at *9 (E.D. Mich. July 22, 2014) (no duty of care in the loan modification process). In this case, Mr. Pickett does not specifically allege what RCS's duty was vis-à-vis the insurance proceeds, but he does allege that RCS was required by the terms of the mortgage to inspect the repairs made on his Property as a prerequisite to disbursement and failed to do so. The Court finds, at this stage, that he has plausibly alleged that RCS owed him a duty. This is especially so in light of the fact that it is not clear from the complaint or any attached documents why RCS held the proceeds for months without inspecting the Property or paying any proceeds to Mr. Pickett, ultimately waiting until he defaulted and applying the proceeds to the default. As such, the Court finds that Mr. Pickett's negligence claim against RCS survives RCS's motion to dismiss.

### b. *Breach of contract*

In order to plead adequately a claim for breach of contract against RCS, Mr. Pickett must first allege that he had an express or implied contractual agreement with RCS. As a general principle, a mortgage servicer is not a party to a mortgage contract. *See Dill v. Am. Home Mortg. Servicing, Inc.*, 935 F. Supp. 2d 299, 303 (D.

Mass. 2013); *Mudge v. Bank of Am., N.A.*, Civil No. 13-cv-421, 2015 WL 1387476, at *5 (D.N.H. Mar. 25, 2015); *Ayoub v. CitiMortgage, Inc.*, Civil Action No. 15-CV-13218-ADB, 2018 WL 1318919, at *7 (D. Mass. Mar. 14, 2018); *James v. GMAC Mortg. LLC*, 772 F. Supp. 2d 307, 315 (D. Me. 2011); *see also Moore v. Mortg. Elec. Reg. Sys., Inc.*, 848 F. Supp. 2d 107, 127 (D.N.H. 2012); *Chanthavong v. John Doe Corp.*, No. CA 10-211S, 2012 WL 6840496, at *3 (D.R.I. Nov. 19, 2012) (collecting cases); *Mazzei v. The Money Store*, 308 F.R.D. 92, 110 (S.D.N.Y. 2015) ("A significant majority of courts have concluded that loan servicers are not in privity of contract with mortgagors where the servicers did not sign a contract with the mortgagors or expressly assume liability.").

The operative and governing agreement in Mr. Pickett's complaint is the mortgage contract. The mortgage agreement referenced in Mr. Pickett's complaint is between him as "Borrower" and America's Wholesale Lender as the "Lender," and MERS as "Mortgagee." Mr. Pickett does not allege that he had a contract with RCS, but skips right to the allegation that RCS breached the Mortgage by failing to pay him the proceeds to cover the repairs to his Property. Accordingly, Mr. Pickett's breach of contract claim against RCS fails to state a claim for relief.

   *c. Conversion*

Mr. Pickett alleges that RCS knew he had a Property interest in the proceeds, it "had no superior right to any portion of the Proceeds as it was only a holder of the funds and required to make disbursements pursuant to terms of the Mortgage." Mr. Pickett further alleges that RCS "intending to permanently deprive [him] and

10

intending to appropriate the Proceeds to itself, did in fact deprive and appropriate the Proceeds to itself to the detriment of the Plaintiff." That is not enough to state a claim for conversion. He does not allege that he was "entitled to possession of the personalty, at the time of conversion." *Alex & Ani, LLC*, 31 F. Supp. 3d at 371. While it may be true that Mr. Pickett had an interest in the proceeds, the mortgage contract gives him a conditional interest, not an absolute right to them. In fact, RCS did not appropriate the proceeds to itself, but applied them to the outstanding principle balance on the Note at the time of the foreclosure, in accordance with Section 22 of the mortgage. Therefore, Mr. Pickett's conversion claim against RCS fails.

### d. *Unjust enrichment*

Mr. Pickett alleges that RCS knew Mr. Pickett had an interest in the proceeds and, as the mere holder of funds, did not have a superior right to the proceeds, and was required to make disbursements pursuant to the Mortgage. He alleges that RCS appreciated the benefits of the proceeds as well as the repairs he made to the Property, and that retention was inequitable. These bare allegations, without any factual support are not sufficient to state a claim. There is no doubt that RCS did not have a right to keep the proceeds, but was required to disburse them in accordance with the terms of the mortgage. However, as the servicer, RCS did not retain any benefits in the form of the proceeds, which it paid to the Lender, or the value of the allegedly improved Property because it had no interest in the Property itself. As such, Mr. Pickett's unjust enrichment claim against RCS fails.

11

### e. *Vicarious liability*

Mr. Pickett levels vicarious liability claims against BAC on his negligence, breach of contract, and conversion claims against RCS. Mr. Pickett's vicarious liability claims fail in light of the Court's previous determination that he cannot establish that BAC had any duty or took any action in relation to the insurance proceeds. RCS was the loan service platform for BONY between the relevant period of July 20, 2014 until December 8, 2014; BAC was never the Lender on the mortgage so could not be vicariously liable for any of that mortgage servicer's alleged actions. As such, all claims of vicarious liability between RCS and BAC fail.

## IV. Conclusion

Based on the foregoing reasons, Mr. Pickett's negligence claim against RCS survives. All remaining claims and Defendants are dismissed. The Court GRANTS BANA's motion to dismiss. ECF No. 32. The Court GRANTS RCS, DITECH, and BONY's motion to dismiss (ECF No. 33) on Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, & 12, and DENIES RCS's motion to dismiss on Count 1 (negligence against RCS).

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

August 3, 2018